hKLEES, Judge.
In this suit for personal injuries, defendant, Avery Alexander, appeals from a judgment of the trial court rendered in favor of plaintiff Donald Olivier. The trial court ruled that Alexander had custody of a construction scaffold on his property, and that he was strictly liable to plaintiff for the serious injuries he suffered after the scaffold collapsed. Donald Olivier answered the appeal contending that the trial court erred in finding no negligence on the part of Alexander. Plaintiff also contends that the damage award of $90,000.00 was inadequate. Mrs. Olivier appeals the failure to award her consortium damages.
FACTS AND PROCEDURAL. HISTORY
Avery Alexander owned the property at 2714 Second Street and began renovation of the apartment building located on the premises in 1984. Over a period of several years Alexander employed three general and independent contractors, including Ronnie’s Heating and Plumbing which employed Olivier. Alexander routinely visited the construction site to check on progress of the work.
On December 11,1986 Olivier was working at the construction site under the direction of Ronnie Gabriel, owner of Ronnie’s Heating and Plumbing.
| ^.Olivier was standing on a ladder outside the building installing furnaces and attempted to step on a scaffold that surrounded and was attached to the building. The scaffold collapsed, and Olivier fell ap *774 proximately 20 feet and suffered serious injury to his back. Olivier testified that he believed the scaffold was not constructed properly. He stated that the scaffold on Alexander’s property consisted of wooden boards and nails, while other scaffolding he had used was made of iron and pieced together with screws and braces.
Alexander admitted seeing the scaffold on his building, but he did not remember when. Work on Alexander’s building lasted from 1984 until 1987. Alexander said the scaffold was erected by the first contractor shortly after construction began. He denied any involvement in construction of the scaffold or its design.
Donald and Susan Olivier filed a petition for damages against Alexander. On January 11, 1988 Aetna Casualty & Surety Company, insurer of Ronnie’s Heating and Plumbing, intervened to recover compensation benefits paid to or on behalf of Olivier.
The trial court awarded Olivier $90,-000.00 against Alexander and awarded Aetna $6,613.05 to be recovered “out of the Judgment of this Court.” In reasons for judgment the trial court stated as follows:
This Court finds that plaintiff [sic] indeed had the custody and garde of the scaffold. Testimony was presented at trial that revealed that the defendant was visible and intimately involved in the construction project. The defendant visited the job on a weekly basis, provided plumbers and electricians for the job, signed off on acceptances of the work and approved the hiring and firing of contractors. Thus, this Court finds that defendant is liable for plaintiffs injuries due to strict liability but not negligence.
[.¡Plaintiffs argue that the trial court erred by finding that defendant was not negligent, by refusing to award Mrs. Olivier loss of consortium, and by awarding Mr. Olivier only $90,000.00 in total damages. Alexander denies liability under theories of negligence or strict liability.
STANDARD OF REVIEW
In reviewing factual findings of a trial court, an appellate court is limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 (La. 1/16/96); 666 So.2d 612. Before an appellate court reverses a trial court’s factual conclusions, we must find, after reviewing the entire record, that no reasonable factual basis exists for the verdict. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). We are also mindful of our constitutional duty to review the record for clearly erroneous factual determinations. Ambrose v. New Orleans Police Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94); 639 So.2d 216, 221.
LIABILITY
La. Civ.Code art. 2317 imposes strict liability for damage caused by a defective thing in a defendant’s custody. To hold defendant liable under article 2317, the plaintiff must prove: (1) the thing which caused the damage was in the care, custody and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injuries were caused by this defect. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
Article 2317 imposes liability based on custody, not ownership. Thumfart v. Lombard, 613 So.2d 286, 290 (La.App. 4th Cir.1993), unit denied, Montalbano v. Lombard, 617 So.2d 1182 (La.1993). Custody, distinct from ownership, refers to a person’s supervision and control (garde) over a thing posing an unreasonable risk |4of harm. Id. (citing Loescher v. Parr, 324 So.2d 441, 446 (La.1975).) The Supreme Court has utilized a two-part test in determining whether the defendant has custody. First, the defendant must have right of direction and control over the thing. Second, the court must examine what, if any, kind of benefit the defendant derives from the thing. Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La.1991).
*775 In summary, Alexander owned an apartment building which was under renovation from 1984 to 1987. The scaffolding was attached to. his building for over four years with his knowledge and he- had control and visited the job site regularly. Alexander directly benefited from the scaffolding because it had been used to renovate his building.
The trial court determined that Alexander was at the construction site weekly, that he provided plumbers and electricians, signed acceptances of work, hired and fired contractors, and -was “intimately involved in the construction project.” Considering the record, the trial court’s conclusion that Alexander had custody and control of the scaffolding is not manifestly erroneous and should not be disturbed.
We also find that the scaffold was clearly defective and created an unreasonable risk of harm which directly caused Olivier’s injuries. Therefore, we affirm the finding of strict liability.
COMPARATIVE FAULT
The trial court did not address the issue of Olivier’s fault, although Alexander alleged in his answer to the petition that Olivier’s injuries were caused by plaintiffs negligence. Considering the photographs in evidence which depict obvious defects in the scaffolding, an examination of Olivier’s fault is warranted.
|sThe trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong. Clement v. Frey, 95-1119, 95-1163 (La. 1/16/96); 666 So.2d 607, 610. A reviewing court may reallocate fault only after it has found an abuse of discretion and then, only to the extent of lowering or raising the percentage of fault to the highest or lowest point. Warren v. Compagna, 96-0834 (La.App. 4 Cir. 12/27/96); 686 So.2d 969, 980. The Supreme Court has outlined five factors which may influence the degree of fault assigned: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967, 974 (La.1986).
Applying these factors to this case, we are compelled to conclude that Olivier’s negligence was a major factor in his fall. Olivier attempted to install a furnace vent on an exterior wall and used a ladder to position himself at or above the second level of the building. He was unable to reach a screw to anchor a clamp for the vent, and rather than reposition his ladder, he put one foot on a horizontal piece of lumber that was part of the scaffolding. The board gave way and Olivier fell to the ground.
Based on Olivier’s testimony and the photographs introduced at trial, we find that plaintiff knew or should have known that the boards of the scaffolding were unstable and totally unsafe. The scaffold had been in place for several years and deteriorated to a point where only a few boards remained. In fact, photographs lfiof the building show that the boards could only loosely be referred to as “scaffolding,” and the structure appeared to be completely unusable.
Olivier had worked on scaffolding and testified that it did not look like other scaffolding which was generally made of iron, secured with screws and braces. There was no evidence that Olivier was compelled to complete his work in a hurry. Under these circumstances, we find that Olivier disregarded his own safety by stepping on the scaffold and was grossly negligent.
We find the trial court’s failure to assign fault to Olivier to be an abuse of discretion. We conclude that the minimum amount of fault attributable to Olivier is seventy-five (75%) percent. Cf. Verrett v. *776 Louisiana World Exposition, Inc., 503 So.2d 203 (La.App. 4th Cir.), writ denied, 506 So.2d 1229 (La.1987). (Plaintiff who lost balance and fell from scaffold assigned 75%. fault.) We therefore allocate 75% fault to plaintiff and 25% fault to defendant.
DAMAGES
Plaintiffs contend that the amount of damages is inadequate considering the serious nature of the injuries. We agree.
The trial court awarded $90,000.00 in total damages to Olivier. He fell approximately twenty feet onto his buttocks and lower back. He suffered multiple rib fractures and herniated discs which required two back surgeries. During the second surgery, a two-level laminotomy, metal screws and plates were placed in his back and he must wear a back brace. He has a 20% permanent disability of his lower back and is restricted to light work without prolonged sitting, stooping, bending, crawling, lifting or climbing. Olivier has not been able to return to work since the accident. Olivier, 38 years old at the time of trial, testified that he cannot |7play on the floor with his children, play ball, travel with them or teach his children to ride a bike.
Plaintiff has $55,660.62 in stipulated past medical expenses. With his severe injuries and permanent disability, the award of $90,000.00 is woefully inadequate. The award does not encompass the gravity of the injuries, his large medical expenses, or past and future lost wages, all of which were proven at trial.
The awards given in Louisiana courts for back injuries similar to those of plaintiffs are varied. In Jones v. Trailor, 93-2144 (La.App. 4 Cir. 4/28/94); 636 So.2d 1112 writ denied, Rome v. Traylor, 94-1337 (La.9/16/94); 642 So.2d 193, a plaintiff underwent two back surgeries and had restrictions placed on her employment similar to those given plaintiff here and was awarded $300,000 in general damages, exclusive of past and future medical expenses and lost wages. In Spangler v. North Star Drilling Co., 552 So.2d 673 (La.App. 2nd Cir.1989), the appellate court reduced the trial court’s general damage award from $600,000 to $375,000 for a plaintiff who had two back surgeries. However, in these cases, the appellate court either affirmed the award of the trial court or reduced the award to the highest point within the discretion of the trier of fact. In this case, we must increase the award to the lowest point which would reasonably be within the discretion of the trial judge. We find the case of Maynor v. Vosberg, 25,922 (La.App. 2 Cir. 11/28/94), 648 So.2d 411, writ denied, 95-0409 (La.4/28/95), 653 So.2d 590, to be similar to the case at hand. In that case, the plaintiff suffered two herniated discs and three surgeries which resulted in a permanent impairment and an inability to work. The appellate court increased his award of damages to the lowest possible amount, $150,000.00.
| sUnder the circumstances presented in the present case, and after a review of the applicable Louisiana jurisprudence, we find that an award of $200,000.00 is the lowest possible award which the trial court could have reasonably awarded to Mr. Olivier in general damages. We affirm the award of $55,660.62 for stipulated medical expenses.
Further, the trial court failed to make an award for lost wages, although the record supports such an award. Plaintiff testified at trial that he has been unable to return to work as a plumber following this accident, although he attempted to do so. Plaintiff claims he earned over $15,000 in 1986, prior to this accident, and introduced records from the Social Security Administration to support this claim. He claims that he is entitled to an award of lost wages in this yearly amount from the date of the accident through the time of trial in 1996, or approximately $155,-000.00. *777 However, plaintiff only introduced evidence of his income for two years, 1985 and 1986. In addition, although plaintiffs treating physician released plaintiff, to light duty work following the surgeries, there is no evidence in the record that plaintiff attempted to obtain employment within his limitations. Further, plaintiff offered no expert testimony concerning his ability to return to work. Under these circumstances, we find that plaintiff is entitled to an award for past lost wages in the amount of $50,000, which fairly represents the wages he may have earned through 1990 when he underwent the second surgical procedure'
Finally, Mr. and Mrs. Olivier contend that the trial court abused its discretion by failing to award damages to Mrs. Olivier for loss of consortium. We agree. The testimony showed that Mr. Olivier can no longer support his family, participate in sports, travel, or assist with major household chores. His disability | flhas made him more irritable and adversely affected his intimate marital relationship. We therefore award Mrs. Olivier $25,000 for loss of consortium, services and society. . Cf. Crane v. Exxon Corp., 613 So.2d 214 (La. App. 1st Cir.1992).
CONCLUSION
Accordingly, for the reasons assigned herein, we amend the judgment of the trial court to increase the amount of total damages awarded to plaintiffs to $330,660.62, plus interest from judicial demand, which shall be reduced by 75% to reflect plaintiffs comparative fault. The judgment is affirmed as amended.

AFFIRMED AS AMENDED.

WALTZER, J., dissents.
BYRNES, J., DISSENTS FOR THE REASONS ASSIGNED BY WALTZER, J.